THE PEOPLE *ex rel.* Cairo Telephone Company

*v.*

THE WESTERN UNION TELEGRAPH COMPANY.

| 166 | 15 |
|-----|-----|
| 184 | 448 |

*Filed at Ottawa April 3, 1897.*

1. TELEGRAPHS—*right of telegraph company to refuse to have telephone put in its office.* *Mandamus* will not lie to compel a telegraph company to permit a telephone company to place a telephone in its office, to enable subscribers to the telephone company to use its line in receiving and transmitting telegrams, although the telegraph company has such an arrangement with a rival telephone company.

2. SAME—*what is not a waiver of right to refuse verbal messages over telephone.* The fact that a telegraph company has an arrangement with one telephone company whereby verbal messages are transmitted and received over the telephone line, does not operate as a waiver of its right to refuse verbal messages over the line of another telephone company.

3. SAME—*section 6 of the act concerning telegraph companies construed.* The refusal of a telegraph company to permit a telephone company to place a telephone in its office or to receive or transmit verbal messages over its lines, is not violative of section 6 of the act relating to telegraph companies, (Rev. Stat. 1874, p. 1053,) even if it were admitted that telephone companies are telegraph companies in contemplation of law.

ORIGINAL petition for *mandamus.*

LANSDEN & LEEK, for petitioner:

That a writ of *mandamus* will be awarded against respondent to compel it to give the relator the same kind of service that it is now giving the Central Union Telephone Company is clearly established by the authorities. *Delaware Telegraph Co.* v. *State,* 50 Fed. Rep. 677, and 47 id. 633; *State* v. *Bell Telephone Co.* 23 id. 539; *Commercial Union Telephone Co.* v. *Telegraph Co.* 61 Vt. 241; *Chesapeake Telephone Co.* v. *Telegraph Co.* 66 Md. 399; *Bell Telephone Co.* v. *Commonwealth,* 3 Atl. Rep. 825; *State* v. *Bell Telephone Co.* 36 Ohio St. 296; *State* v. *Telephone Co.* 17 Neb. 126; *Stock Exchange* v. *Board of Trade,* 127 Ill. 153; *Central Union Telephone Co.* v. *State,* 118 Ind. 194.

Section 6 of chapter 134 of the Revised Statutes of Illinois clearly makes it the duty of the respondent to receive telegraph messages from and transmit the same for the relator.

The relator is a telegraph company, within the meaning of said statute, and the respondent is violating said statute by refusing to receive, both at its said public telegraph office and public telegraph station, the relator's dispatches and transmit the same for it. *State* v. *Bell Telephone Co.* 36 Ohio St. 296; *Chesapeake Telephone Co.* v. *Telegraph Co.* 66 Md. 399; *Bell Telephone Co.* v. *Commonwealth,* 3 Atl. Rep. 825.

ESTABROOK & DAVIS, for respondent:

This action is one to compel the respondent, not to perform the services as a telegraph company, but to accept the services of a telephone company. The relator claims that because respondent employs the Central Union company to assist it in delivering messages it is also bound to employ any other telephone company. It is no part of the duty of a telegraph company to maintain communication by telephone with any person. Its duty is to transmit messages by telegraph. It has a right to require messages to be in writing. *Telegraph Co.* v. *Dozier,* 67 Miss. 288; *Atchison, etc.* v. *Denver Co.* 110 U. S. 667.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The relator filed its petition in this court praying for a writ of *mandamus* directing the defendant to permit it to put one of its telephones in the telegraph office of defendant at Cairo, Ill., and requiring defendant, at its telegraph stations in said city, to receive telegraph messages from and transmit telegraph messages to the subscribers of relator at Cairo by means of its telephone exchange, in the same manner that defendant receives from and transmits telegraph messages to the subscribers

of the Central Union Telephone Company by means of the telephone exchange of the latter company.   The petition has been answered, and relator has filed its demurrer to the answer, upon which demurrer the cause is submitted for decision.   The answer admits substantially all of the matters of fact alleged in the petition, and the facts averred in the answer by way of defense are admitted, so far as well pleaded, by the demurrer.   The facts as so appearing are as follows:

The relator is a telephone company organized under the laws of this State and doing business in the city of Cairo.   It has in operation more than three hundred telephones, and maintains a telephone exchange at a central office, where connections are made between subscribers by means of a switch-board, enabling them to communicate with each other.   The Central Union Telephone Company also operates a telephone exchange in the same city.   The telephones of the latter company are the property of the American Bell Telephone Company, and are used under a license from that company.   The defendant is a corporation engaged in the telegraph business, with wires throughout the United States.   It maintains two telegraph stations in Cairo, one of which is its telegraph office, and the other is in the Halliday House, a hotel in said city.   Each telephone company has a telephone in said hotel, where defendant keeps a telegraph station, and defendant receives and transmits from and to subscribers to the Central Union Telephone Company telegraph messages by using the wires and telephone of that company, and pays for the service.   Defendant also has a telephone of the Central Union Telephone Company in its telegraph office, and receives and transmits telegraph messages by that telephone in like manner as at the hotel, and pays the telephone company for the service. Subscribers to relator's telephone desire to receive and transmit messages from and to the telegraph office by means of relator's telephone, and for that purpose the

166—2

relator has demanded of the defendant to permit it to put one of its telephones in defendant's office, and that defendant shall receive telegraph messages from and transmit telegraph messages to relator's subscribers at said telegraph office and at the hotel where both companies have telephones, in the same manner as it does with the other telephone company. Relator has offered to put in a telephone without charge and to perform the service without cost or expense to the defendant, but the defendant has refused to permit the telephone to be put into the telegraph office, or to use it there or at the hotel for receiving or transmitting messages. In consequence of this refusal relator has been compelled to maintain a telephone station near the telegraph office, and to employ a messenger boy to carry messages to and from the telegraph office, which entails expense upon relator.

The defendant has entered into contracts with the National Bell Telephone Company and the American Bell Telephone Company, which prohibit it from co-operating with any other telephone company, and under which it has employed the Central Union Telephone Company, as a licensee of said companies, to transmit messages by telephone. The existence of these contracts was the only reason given by defendant for refusing to accede to the relator's demands, but did not constitute the only reason in fact. The defendant, in order to insure accuracy and for its protection, requires that all messages received by it should be in writing, on blanks furnished by it, subject to certain conditions printed thereon. In the contracts under which it receives and transmits messages by the Central Union Telephone it is provided that messages from subscribers by telephone shall be received subject to the rules, regulations and conditions of defendant, and that it shall be the duty of the telephone company to require from its subscribers assent to said rules, regulations and conditions, by writing said messages upon the regular contract blanks of

defendant.    While the defendant has refused to receive for transmission verbal messages over the line of relator, it has never refused to receive and transmit any written messages.

The defendant is bound to treat all persons and corporations alike, and without discrimination, in its business of receiving and transmitting messages by telegraph. The question presented here is, whether the conduct of defendant constitutes a discrimination between the telephone companies in the performance of that service.    It has refused to transmit messages by means of relator's telephone to the individuals to whom they are addressed, and it has also refused to permit relator to put a telephone in its office or to receive verbal messages over such telephone.    When defendant receives a message to be delivered to a person in Cairo it is its duty to make delivery to that person, and the refusal to transmit the message to such person by the telephone is a refusal to employ the relator in the performance of that duty.    So far, at least, this action is one to compel the defendant to accept the services of relator rather than to compel it to perform its duty as a telegraph company without discrimination.    There have been a number of cases where individuals or telegraph companies have sought to compel telephone companies to place telephones in certain offices on the same terms given to other subscribers.    In several of these cases the telephone company had furnished connection with the Western Union Telegraph Company, the defendant in this case, but had refused like connections and like service to other telegraph companies.    It has been uniformly held that telephone companies are bound to furnish the same service and connections to all persons and corporations alike, and the same rule undoubtedly applies to telegraph companies; but there is no case to which we have been referred which holds that a telegraph company is bound to employ any one person or corporation who applies to it, in

receiving and transmitting messages between it and the person for whom it performs the service. It could scarcely be said that the duty to treat all persons alike in serving the public would require that when one messenger boy is employed to carry messages to the persons to whom they are directed, every other boy having equal physical ability to carry messages, who may offer himself for the service, must also be employed; nor that if one person had secured a list of subscribers or patrons for whom he was to deliver messages, and defendant should employ him to make delivery to such subscribers, any other person who should secure three hundred or more subscribers, as relator has, would have a right to compel defendant to employ him to deliver messages to his list of subscribers. The defendant undoubtedly has a right to choose its own agencies for the performance of its duties, and is not bound to admit to its service every person or corporation who desires to assist in such performance or act as such agency. Such a choice is not a discrimination between persons or corporations in respect to a matter where they have any right or the defendant owes any duty. So the fact that defendant has employed the Central Union Telephone Company to deliver its messages to persons to whom they are addressed in Cairo, certainly does not require it to employ relator when it offers its services in a like employment.

The other branch of the case relates to the right to put a telephone into defendant's office and to compel it to receive verbal messages for transmission. The writ, if granted, would compel defendant not only to answer telephone calls whenever any person might choose to ring up the office, but also to furnish office room; and it is probably true, as claimed by defendant, that the telephones of two rival companies in its office, perhaps both demanding service at the same time, might be no ordinary nuisance. But aside from the question whether defendant owes any duty to the public or relator to furnish

office room and attend the telephone, we think it is not bound to receive verbal messages. What the relator asks is that its subscribers may call up defendant's operator and tell him what messages they want to have sent. This would not be in accordance with the course of business of telegraph companies, and it would be most unreasonable to say that a telegraph company must receive or deliver messages by such a method. It is a matter of common knowledge that messages must be written, and whether the conditions and limitations referred to in defendant's answer are reasonable or not, and whether the public may be required to assent to them or not, defendant undoubtedly has a right to require that messages shall be written. The risk of mistake, liability of disputes as to what is said, the uncertainty as to the identity of the person communicating, and other difficulties which will readily suggest themselves, would increase the hazards of the service very greatly. And this applies with equal force both to receiving and transmitting messages over the telephone wires. The only serious question is whether the fact that the defendant has waived its rights in that respect as to the other telephone company requires a like waiver on its part as to the relator, and we do not think that it does. It may be willing to assume risks with another telephone company of whose responsibility it may be satisfied, which it would not be willing to assume with the relator for proper and sufficient reasons. Such arrangements are founded entirely upon the agreements of parties, and defendant is not bound to admit every other corporation into a like arrangement. This has been the rule as to carriers, and it has been held that they cannot be compelled to contract with one connecting carrier for a through rate, or for through routing, or for through tickets, because such an arrangement has been made with another connecting carrier. *Oregon, etc. Railway Co.* v. *Northern Pacific Railway Co.* 9 U. S. C. C. 409; *Little Rock and Memphis Railway Co.* v.

*St. Louis, etc. Railway Co.* 11 id. 417; *Little Rock and Memphis Railway Co.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 41 Fed. Rep. 550; *St. Louis Drayage Co.* v. *Louisville Railway Co.* 65 id. 39.

Relator quotes section 6 of an act to revise the law in relation to telegraph companies, in force July 1, 1874, and insists that defendant is violating that statute by refusing to comply with its demands. That section imposes penalties for the refusal of a telegraph company to receive or transmit any dispatch from any other telegraph company. It is claimed that relator is a telegraph company, and it has been so held as to telephone companies in some cases. But if that should be conceded, the statute does not contemplate that defendant shall permit another telegraph company to put a telegraph instrument in its office, nor that defendant shall attend to it and take messages from it, nor that it shall receive or transmit verbal messages from or to such other telegraph company. We think the defendant is not violating the statute.

The writ of *mandamus* will be denied.

*Mandamus denied.*