(No. 12980.—Reversed and remanded.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* The Collinsville Pressed Brick Company, Appellee, *vs.* THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY, Appellant.

*Opinion filed December 17, 1919.*

1. PUBLIC UTILITIES—*allowing rehearing extends time for taking appeal.* Under the Public Utilities act a rehearing may be asked for within the thirty days allowed by the act for an appeal from the order or rule complained of, and, if a rehearing is allowed by the commission, the thirty days' limitation for an appeal begins to run when the final order on rehearing is entered and not from the date of the original order.

2. SAME—*unrestricted rehearing re-opens the whole case.* Upon the granting by the Public Utilities Commission of an unrestricted rehearing the whole case is re-opened and is to be considered as though no order or rule had been entered, and on subsequent appeal after the commission has acted on the rehearing the whole case is subject to review.

3. SAME—*when commission cannot order railroad company to issue through bill of lading.* Section 44 of the Public Utilities act does not authorize the commission, independently of section 42 of the act, to order a steam railroad company to issue through bills of lading on freight shipments offered to it, destined for points on an electric railroad with which the steam railroad has no direct physical connection except over the tracks of a terminal railroad company, and with which electric line the steam railroad company has no agreement for through rates or working arrangements.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

ALLEN, HUMPHREY & CONVERSE, (D. P. WILLIAMS, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, WILLIAM E. TRAUTMAN, ALBERT D. RODENBERG, and MATTHEW MILLS, for the Utilities Commission.

GEORGE M. GILLESPIE, for the Collinsville Pressed Brick Company.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon county affirming an order and decision of the State Public Utilities Commission with reference to a controversy between the Collinsville Pressed Brick Company and the appellant, the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company.

The Collinsville Pressed Brick Company (hereinafter referred to as the brick company) is located at Collinsville, Illinois, on the line of said railroad company,—hereinafter referred to as the Pennsylvania. The Pennsylvania is a common carrier operating a steam railroad across the State of Illinois, passing through Collinsville to East St. Louis, Illinois. The East St. Louis, Columbia and Waterloo Railway Company (hereinafter referred to as the electric line) is an electric railway or interurban running from Waterloo, Illinois, to East St. Louis. There is no direct physical connection between the electric line and the Pennsylvania at East St. Louis other than by the switching tracks of the Terminal Railroad Association. It is not shown what length of track of that association must be traveled over to connect the electric line and the Pennsylvania, but both parties agree that the connection must be over the switch tracks of the Terminal Railroad Association. On June 7, 1917, the brick company called on the Pennsylvania for a car to be loaded with brick, and after the car was loaded tendered it to the Pennsylvania and demanded that said company issue a standard form of through bill of lading for the transportation of the car from Collinsville to the Gauen Mercantile and Lumber Company at Waterloo via the electric line. The agent of the Pennsylvania refused to issue the bill of lading as requested. After a somewhat lengthy discussion among the officers of the brick company, the Pennsylvania and the electric line, the general freight agent of the Pennsylvania informed the brick company that the Pennsylvania had no physical connection with

the electric line or any through route, rates or working arrangements with that line, and suggested that if the brick company wished the car of brick to go to Waterloo by way of the electric line the brick company should bill the car to East St. Louis and there have it transferred to the electric line and re-billed to the point of destination. During this discussion the car in question stood loaded with brick upon the tracks of the Pennsylvania at Collinsville. After the car had stood there for seven days the brick company tendered a billing to the Pennsylvania to East St. Louis, and the superintendent of the electric line had the car transferred at East St. Louis to the electric line and thence shipped to Waterloo. However, before the Pennsylvania would haul the car to East St. Louis it required the brick company to pay $20 demurrage on account of the seven days' time during which the car had stood on the track at Collinsville, and also required the brick company to pay $8, being the amount of the prepaid freight from Collinsville to East St. Louis. It is conceded by all parties that the amount of demurrage, being $2 a day for five days and $5 a day for two days, in all $20, was the regular published demurrage tariff on the lines of the Pennsylvania as filed and approved by the Illinois State Public Utilities Commission. On July 17 the Collinsville Pressed Brick Company filed the petition in question here, praying a refund of the $20 collected as demurrage. The electric line also at about the same time filed its petition with the Public Utilities Commission claiming that the Pennsylvania was discriminating against it, in violation of section 44 of the Public Utilities act. On the hearing before the Public Utilities Commission the complaints of the brick company and the electric line were consolidated and heard at the same time. On March 19, 1918, an order and decision were rendered in effect granting both petitions, and on June 5, 1918, an order was entered in the proceedings under the petition filed by the brick company, requiring the Pennsyl-

vania to refund the $20 demurrage. From this decision of the commission an appeal was taken to the circuit court of Sangamon county and the judgment of the commission was affirmed. From the judgment and decision of the circuit court this appeal was taken to this court.

At the last term of this court a motion was made by appellee to dismiss the appeal on the ground that the appeal from the decision of the Public Utilities Commission to the circuit court of Sangamon county was not taken within the time required by the Public Utilities act. That motion was taken with the case and must be first considered.

The original order entered by the Public Utilities Commission which is sought to be reviewed here was entered on June 5, 1918. On June 29, 1918, the appellant filed its petition with the commission praying for a rehearing and modification of said order, and on July 17, 1918, the commission granted a rehearing. On October 28, 1918, the commission held a rehearing, at which time the entire record upon which the order of June 5 was based was before it and was reconsidered. On December 17, 1918, the commission entered its supplemental order in this matter, in which it only modified the order of June 5 to the extent of correcting the name of the appellant, the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company, the first order having used the word "Railway" instead of "Railroad." On the same day said supplemental order was entered the appellant prayed an appeal from the decision of the commission to the circuit court of Sangamon county, and the commission certified the entire record, including the orders of June 5 and December 17, 1918, and all the evidence and proceedings upon which the two orders were based. When the appeal was heard before said circuit court no motion was made to dismiss the appeal, and the court considered the entire record upon its merits. Section 68 of the Public Utilities act provides: "Within thirty days after the service of any order or decision of the commission made

after a final hearing, or within thirty days after a hearing or refusal of a hearing upon any rule, regulation, order or decision which the commission is authorized to issue without a hearing and has so issued, any person or corporation affected by such rule, regulation, order or decision may appeal to the circuit court of Sangamon county, for the purpose of having the reasonableness or lawfulness of the rule, regulation, order or decision inquired into and determined." (Hurd's Stat. 1917, p. 2308.)    Section 67 of said act authorizes the commission to grant a rehearing upon the application of any interested party, when in the judgment of the commission sufficient reason is made to appear.

Counsel for appellee in one place in their brief concede that if the appeal is taken within thirty days after the entry of the final order on rehearing such appeal is lawful, but they seem to argue that the original and final order here must be considered the order of June 5 and not the order of December 17, 1918, after the rehearing had been allowed. We cannot so hold. Where an unrestricted rehearing is granted the whole case is re-opened and comes up for consideration as though no judgment had ever been entered. (*Colesar* v. *Star Coal Co.* 255 Ill. 532.)    In our judgment a fair construction of the Public Utilities act is that the thirty days' limitation for appeal applies to the final order after the rehearing is disposed of, if a rehearing is had. Manifestly, there was no final order in this case until December 17, 1918, and the appeal was prayed within thirty days after such order of December 17 was entered. This being so, we find it unnecessary to consider or decide the question suggested by counsel for appellee that counsel for appellant have argued that the petition for rehearing may be filed any length of time after the order is entered. A rehearing can be asked at any time within the thirty days allowed by the statute for an appeal, and if the rehearing is granted the thirty days' limitation for appeal begins to run when the final order is entered after the rehearing and

not at the date of the original order. Whether a petition for rehearing can be filed after the thirty days has expired after the final order is unnecessary for us to decide on this record and we express no opinion with reference to the same. The motion of appellee to dismiss the appeal on the ground urged must be denied.

The facts involved in the merits of this case are not complicated. The brick company loaded a car with brick at Collinsville and then demanded that the Pennsylvania accept the same and issue a through bill of lading to Waterloo *via* the electric line. This the Pennsylvania refused to do on the ground that it did not physically connect with the electric line and had no through route, rate or working arrangements with the electric line. The Pennsylvania was willing to bill and haul the car over its line to its terminus at East St. Louis, but to this the brick company and the electric line would not agree. For seven days the parties argued, until the brick company did bill the car to East St. Louis. Meanwhile the $20 demurrage had accrued and the Pennsylvania collected this amount before it moved the car. It seems to be conceded that if the Pennsylvania rightly refused to issue a through bill of lading under the circumstances shown on this record it was not legally at fault for the seven days' delay and therefore could properly collect the demurrage. The Public Utilities Commission in its final order ordered that the Pennsylvania "be and it is hereby directed to issue a through bill of lading to each and every shipper offering freight for shipment to points on the line of said company in the State of Illinois, consigned to points on said electric line." If this order in this regard by the commission was lawful, then the demurrage charge was not rightly demanded of the brick company. While the law imposes upon common carriers the duty of carrying all goods offered to them in the usual course of business, at common law a carrier, in the absence of a special contract, could not be compelled to receive goods to be car-

ried to points beyond its own line or to transport such goods beyond its own line or over the tracks of a connecting carrier. (4 R. C. L. 875.) It is also stated that it is elementary that a carrier has no right to refuse to receive freight merely because it is destined to a point beyond its own line, it being the duty of the carrier to carry the freight to the end of its line and there deliver it to a connecting carrier to be forwarded. (10 Corpus Juris, 69.) The right of an initial carrier to limit its liability to this one line and refuse to issue bills of lading beyond its own line is discussed at some length in *Central of Georgia Railway Co.* v. *Murphey,* 60 L. R. A. 817. On page 821 the opinion states: "Railroad companies are not required to issue through bills of lading beyond their own lines, and if they do not desire to bear the burden incident to through bills of lading of this kind the remedy is in their own hands." In *Post* v. *Southern Railroad Co.* 55 L. R. A. 481, (103 Tenn. 184,) there is a full discussion of this question, with the same conclusion as is reached in the Georgia decision. The writ of error in the Tennessee case to the United States Supreme Court was dismissed, therefore it is perhaps fair to assume that the reasoning of the Tennessee Supreme Court in that case was approved by the United States Supreme Court.

Counsel for appellee insist that under section 44 of the Public Utilities act the Pennsylvania was required to give a through bill of lading as requested by the brick company. That section reads, in part, as follows: "Every common carrier shall afford all reasonable, proper and equal facilities for the prompt and efficient interchange and transfer of passengers, tonnage and cars, loaded or empty, between the lines owned, operated, controlled or leased by it and the lines of every other common carrier, and shall make such interchange and transfer promptly without discrimination between shippers, passengers or carriers either as to compensation charged, service rendered or facilities af-

forded. Every railroad company shall receive from every other railroad company having the same gauge track, at any point of connection, freight cars of proper standard and in proper condition, and shall haul the same either to destination, if the destination be upon a line owned, operated or controlled by such railroad company, or to point of transfer according to route billed, if the destination be upon the line of some other railroad company. But nothing in this act shall be construed as requiring any common carrier to give the use of its terminal facilities to another common carrier engaged in like business." (Hurd's Stat. 1917, p. 2297.)

Counsel for appellant insist that before section 44 can apply there must be action taken by the Public Utilities Commission under section 42 of said act, providing for joint rates. That section provides, among other things, that "whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates or other charges, or classifications in force over two or more common carriers, between any two points in this State, are unjust, unreasonable or excessive, or that no satisfactory through route or joint rate or other charge, or classification exists between such points, and that the public convenience and necessity demand the establishment of a through route and joint rate or other charge, or classification between such points, the commission may order such common carriers to establish such through route and may establish and fix a joint rate or other charge, or classification which will be just and reasonable, to be followed, charged, enforced, demanded and collected in the future, and the terms and conditions under which such through route shall be operated."

Counsel for appellant argue that reading section 42 with section 44 it is clear that it is intended that section 44 should not be enforced, under the circumstances shown in this record, until action has been taken under section 42; that even if the public interest and convenience demanded the establishment of a joint rate, such joint rate could not be estab-

lished without a full hearing of all interested parties; that it is clear under the decisions that before a satisfactory arrangement can be made for through rates there must be an agreement of all parties interested. In *Post* v. *Southern Railroad Co. supra,* the court quoted with approval from the evidence of an expert witness on this subject as follows (p. 488): "Satisfactory arrangements necessary to be made with all parts of the line for operation of through rates include proportions to be allowed each carrier; the ability of the connecting lines to transport the traffic with the utmost speed; the solvency of different parts of the line; their willingness to and ability to promptly settle claims, either for loss to property, overcharge in rates or loss of cars or other property of the company; reciprocity on the part of the connecting lines in delivering freights to the defendant for transportation over its line in return for freights delivered to such connecting lines by it; participation in salaries and expenses of agencies established for procurement of traffic; compliance with the law, State and national, with respect to rates applying to traffic over such other lines; friendly co-operation of connecting lines and performances of the duty so as to satisfy patrons and increase business; that it may not be compelled to send its cars over connecting lines which will not promptly return them; in order to select such connections as are able to furnish it a proportion of cars needed by the through lines; that it may not be required to haul cars to Memphis empty, to meet the requirements of shippers in order to load their freight, while it may have a supply of empty cars on hand to be returned by other routes; so to distribute its tonnage as not to congest one or more of the roads, while forwarding so little traffic over other lines as to cause them to form other connections, to the disadvantage of the Southern railway."

Counsel for appellant argue that the above statement applies with full force to the situation presented by this rec-

ord; that to hold as did the Public Utilities Commission, that although no through rates were established after a hearing before the Public Utilities Commission yet that body could require the Pennsylvania to accept and bill cars to destinations on interurban lines regardless of public necessity, convenience or working arrangements, would be very unfair; that steam roads, with a full line of equipment, could thus be compelled to distribute cars over all kinds of small and irresponsible electric lines with which they had no system of accounting and which produced no trade or traffic; that the electric lines, in turn, could detain the cars and finally return them empty and leave the steam roads to handle the empties as best they could; that to so hold would be unfair to the Pennsylvania and other well equipped steam roads, and that it is clear from a fair construction of section 42 of the Public Utilities act that the legislature never intended to grant the power to the Public Utilities Commission, which it undertook here to enforce under section 44 of said act, before it had found that public necessity and convenience demanded the establishment of through routes and before the parties interested were given a hearing on this question. Unless the Public Utilities act clearly requires this, we do not think the commission would be authorized to require that the initial carrier must accept, bill and carry beyond its terminus any goods that might be delivered to it.

We agree with counsel for appellant that a fair construction of the entire Public Utilities act did not authorize the Public Utilities Commission to enter the order here in question, requiring it to give a through bill of lading over the electric line, as requested by the brick company. Whether the Pennsylvania could be required by the Public Utilities Commission to give a through bill of lading to any railroad with which it had direct physical connection is not in this case and therefore need not be decided. The Pennsylvania not being required to give such through bill of lading, the

law did not compel it to accept the car of brick seven days after it was loaded without the payment of demurrage, and we do not find it necessary to decide whether or not the Public Utilities Commission could compel such demurrage, if illegally charged, to be refunded by the Pennsylvania under section 72 of the Public Utilities act.

The judgment of the circuit court of Sangamon county will be reversed and the cause remanded to that court for further proceedings in harmony with the views herein stated.

*Reversed and remanded.*