(No. 14949.—Reversed and remanded.)

THE JEFFERSON DEPOSIT COMPANY, Appellant, *vs.* THE CENTRAL ILLINOIS LIGHT COMPANY OF PEORIA, Appellee.

*Opinion filed June 20, 1923—Rehearing denied October 5, 1923.*

1. PUBLIC UTILITIES—*contracts for utility service cannot be abrogated except as provided in the Public Utilities act.* Special contracts with a public utility for the furnishing of its commodity to a corporation or individual were not destroyed by the passage of the Public Utilities act, but the act provides a method by which such contracts may be abrogated and they cannot be set aside in any other way.

2. SAME—*when customer is entitled to reparation for charge above contract rate.* Where a customer prior to the passage of the Public Utilities act has contracted with a public utility for the furnishing of heat and light and the utility submits such contract with its schedule of rates filed after the passage of the act, the granting of a petition for the withdrawal of the rates scheduled and the substitution of a rate for meter service does not affect the validity of the contract, and any charge to such customer above the contract rate is an excessive charge, for which the customer is entitled to reparation under section 72 of the act.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

BEN F. GOLDSTEIN, for appellant.

FRANK J. QUINN, (HAROLD R. SCHRADZKI, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause comes on appeal from the order of the circuit court of Sangamon county affirming the order and decision of the Public Utilities Commission denying a claim for reparations filed by the appellant against the appellee in the sum of $2799.60, which the appellant was required to, and did under protest, pay to the appellee for steam-heat service over and above the amount due under a contract between the parties.

In 1910 the appellant erected a twelve-story office building in the city of Peoria, and prior thereto, in 1909, entered into a contract with the appellee's predecessor, the Peoria Gas and Electric Company, for electric current, steam, gas and hot water. By this contract the appellant was to complete the proposed building in the manner provided by the plans and specifications furnished by the gas and electric company so far as the use of the latter's commodities were concerned and to have the building wired to meet the requirements and specifications of the city of Peoria. The contract provided that the gas and electric company should have the exclusive right to furnish steam, gas and electric current for light, heat and power purposes for the building and its tenants. The contract also involved an agreement to use a certain minimum amount of electricity, and for the complete service the appellant was to pay the lump sum of $5700 per annum, providing therein, however, for certain extra charges for any amount of service in excess of that specified in the contract. The contract was for a period of ten years from April 5, 1910, with privilege to the appellant to renew. The appellant built its building in accordance with this contract, and the appellee's predecessor furnished its service in accordance therewith. On April 30, 1913, the appellee became the successor of the Peoria Gas and Electric Company and assumed the contract, and thereafter furnished the service and was paid in accordance with the contract until September, 1918.

After the passage of the Public Utilities act, in 1913, (Laws of 1913, p. 459,) the Public Utilities Commission, in accordance with the provisions of the act, entered a general order to all utilities, known as General Order No. 1, to file schedules of rates in force and operation by them on July 1, 1913. In accordance with this general order the appellee on February 6, 1914, filed a schedule of rates for steam-heating service in force on July 1, 1913, and on the same day filed the schedule of rates in force on January 1,

1914. Rate schedule No. 2 filed by the appellee as in force January 1, 1914, showed the schedule of rates for what is known as flat-rate service. This schedule also, on page 8 thereof, set forth certain contracts referred to therein as non-schedule rate contracts. One item of that schedule is as follows: "Fifteen customers who have contracts covering both heating and electric service in same contract are billed at rates which are made up of fixed charge per month or year, plus a charge for current. The fixed charge covers both heating and electric service. The current charge varies, according to the quantity consumed." With this schedule the copies of such contracts, including that with the appellant, were also filed. On September 5, 1917, the appellee filed with the commission a petition for withdrawal of schedule No. 2, which was the flat-rate schedule for steam-heating service, setting forth in that petition that there was wastage of steam by the flat-rate consumers. Statements of counsel appearing in the record concerning this petition specify rate schedule No. 2 (which is the flat-rate schedule) as the one desired to be withdrawn, leaving other rates in force. This petition also avers that under the flat-rate schedule the consumer's bill for service depended upon the amount of radiation used to heat his premises, the unit being one square foot, and that owing to the wastage of steam under such flat rate and the resulting loss to appellee, it prayed the commission for authority to withdraw the flat rate for steam-heat service and for authority to place all customers on the regular meter-rate schedule.

Appellee published in the Peoria newspapers a notice of its proposed petition for leave to withdraw its flat-rate schedule and to place all users of its steam-heating service on a meter rate. On January 29, 1918, the commission entered a temporary order permitting the withdrawal of the flat-rate schedule and requiring the company to file a statement containing information desired by the commission for the purpose of determining a reasonable rate for steam heat.

Pursuant to this order, the appellee on May 6, 1918, filed with the commission a statement showing the total steam-operating revenue of all users in the city of Peoria, including the appellant. On August 12, 1918, the company petitioned for an increase in its meter rate for steam-heating service in Peoria. On September 25, 1918, the original petition to withdraw the flat-rate schedule was consolidated with the petition for increase of meter rates, and on October 30, 1918, a temporary order was entered authorizing an increase in such meter rates for steam pending the final hearing. By the terms of this order it was made applicable "to each steam-heating consumer except the city of Peoria." So far as this record shows, no final order has ever been entered or other schedule filed.

On September 4, 1919, the appellant filed its complaint herein under section 72 of the Public Utilities act, claiming that the appellee had overcharged it. Section 72 provides as follows: "When complaint has been made to the commission concerning any rate or other charge of any public utility and the commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount."

The grounds upon which the appellant bases its claim are: First, that the contract of April 5, 1910, between the parties hereto is valid and is still in force and binding upon the parties; second, that neither the proceeding arising on the petition of the appellee to withdraw its flat-rate schedule nor on that to increase meter rates contemplated or affected appellant's rights under the contract; and third, that the appellee is not allowed of its own accord to change rates which it has filed with the commission without filing a new schedule concerning such rates and without a hear-

ing of the commission thereon, and that having filed this contract as a non-schedule rate, such contract is valid until set aside according to law.

The appellant does not contend, as we understand it, that the Public Utilities Commission does not have a right to abrogate its contract in case it is shown, on a hearing, that the contract is discriminatory, unjust, unreasonable or preferential, but its position is that the commission has never lawfully passed upon that question; that when the appellee filed its petition to withdraw its flat-rate schedule it was then apparent from the schedules on file with the commission that such petition bore no reference to schedule 8, which included the contract of the appellant.

The power to change rates under the Public Utilities act is confined to the following sections: Section 33 of the act requires that the schedules showing all rates, contracts affecting rates, and other charges, shall be filed with the commission, and shall not, without the consent of the commission, exceed those in effect on July 1, 1913. This section, however, provides that nothing therein contained shall prevent the commission from approving or fixing rates, from time to time, in excess of those shown by the schedules. How this shall be done is set out in later sections of the act hereinafter referred to. Section 35 makes the filing and publishing of the rates in accordance with the act a condition precedent to furnishing the commodity of the public utility to the public. Section 36 provides for the changing of rates and for hearings thereon. This section provides that whenever any change is proposed in any rate or contract relating to or affecting any rate, such proposed change shall be plainly indicated on the new schedule filed with the commission, in such manner as the commission shall direct. It also provides that no public utility shall increase any rate or alter any contract so as to result in any increase in rates except upon a showing before the commission and a finding by it that such increase is justified. This

section also provides that where a schedule stating a con-
tract is filed, the commission may, upon reasonable notice,
on its own initiative, and in case of complaint shall, enter
upon a hearing concerning the propriety of such contract.
Upon such hearing the commission shall establish such con-
tract in whole or in part, or another in lieu thereof which
it shall find to be just and reasonable.   Section 41 provides
as follows:  "Whenever the commission, after a hearing
had upon its own motion or upon complaint, shall find that
the rates or other charges, or classifications, or any of them,
demanded, observed, charged or collected by any public util-
ity for any service or product or commodity, or in connec-
tion therewith, including the rates or fares for excursion
or commutation tickets, or that the rules, regulations, con-
tracts, or practices, or any of them, affecting such rates or
other charges, or classifications, or any of them, are unjust,
unreasonable, discriminatory or preferential, or in anywise
in violation of any provision of law, or that such rates or
other charges or classifications are insufficient, the commis-
sion shall determine the just, reasonable or sufficient rates
or other charges, classifications, rules, regulations, contracts
or practices to be thereafter observed and in force, and
shall fix the same by order as hereinafter provided.   The
commission shall have power, upon a hearing, had upon its
own motion or upon complaint, to investigate a single rate
or other charge, classification, rule, regulation, contract or
practice, or any number thereof, or the entire schedule or
schedules of rates or other charges, classifications, rules,
regulations, contracts and practices, or any thereof, of any
public utility, and to establish new rates or other charges,
classifications, rules, regulations, contracts or practices, or
schedule or schedules, in lieu thereof," etc.

It is apparent from the record that the appellee has
never filed complaint or petition alleging that its contract
with the appellant is unjust, unreasonable or discriminatory.
While it is true that it is stated in its notice concerning its

petition to withdraw its flat-rate schedule that it desired to put all steam consumers on a meter basis, and while the order of the commission allowing the withdrawal of the flat-rate schedule states that all consumers of steam shall be put on a meter-rate basis, yet it is apparent from the petition and the proceedings before the commission that no consumers were contemplated other than those on a flat-rate schedule, which rate was determined by the number of square feet in the building in which the steam was used. Such basis of rate has no reference to or bearing on the appellant's contract, which is a lump-sum contract. No evidence was offered on either of the appellee's petitions that in the slightest degree touched on the question of the reasonableness of the appellant's contract or whether or not it was discriminatory.

Prior to the filing of the appellant's claim for reparations, and the answer thereto alleging that the contract was discriminatory and void, there had been no hearing on that question, and the contract had not at any time been by the commission declared unjust or discriminatory nor abrogated in the manner required by the Public Utilities act. It is not within the legal contemplation of the Public Utilities act that contracts may be set aside by inference, nor that the commission shall have power to do so as an incident to a proceeding on a petition seeking a different relief. The petition of the appellee and its position taken before the commission were that it be allowed to withdraw its flat-rate schedule. Its notice to the public that it desired to put all steam users on a meter basis was based on its petition to withdraw its flat-rate schedule and was not such as required the appearance and objection of the appellant, for the reason that its contract was not on a flat-rate basis. While the order of October 30, 1918, made by the commission temporarily increased meter rates and in terms was made applicable to all consumers of steam in the city of Peoria, it is clear that if the words "all consumers" were intended

to cover other than meter or flat-rate consumers the order in that particular was void, as the commission had no authority to make its order applicable to consumers who held contracts under the non-schedule rate filed, unless there had been a hearing and finding that the appellant's contract was unjust and unreasonable by the proceeding provided for by the act. While the intention of the act is to prevent discrimination in rate charges, it provides the method by which contracts may be abrogated, and their validity can not be attacked in any other way. Such contracts were not, as contended by the appellee, destroyed by the passage of the act. At the time the appellant filed its complaint for reparations its contract had not been abrogated.

The appellee defends, however, on the ground that the contract is discriminatory, unjust and therefore void, and that appellant should not be allowed to recover reparations on an unjust contract. Whether it be so or not, it had never been so determined by the commission, as required by the act, nor did the act itself, without action on the part of the commission, render such contract void. It gave to the commission power so to do on notice and hearing, but until the commission so found the contract must be treated as valid.

The appellee contends, however, that this is a claim for reparations on the ground that the payments required of the claimant were unjust and discriminatory, and that if the contract is unjust and discriminatory, an action for reparations cannot be based thereon, and this being true, it is not unjust or discriminatory to require the appellant to pay the established meter rate. Section 72 authorizes the commission to hear complaints made concerning any excessive charge made by a public utility. The basis of the appellant's complaint is that the appellee has overcharged it. An excessive charge must be construed to be any charge in excess of that which the utility is authorized to make. In this case, until the contract between the parties has been

set aside in the manner provided in the act, any charge over and above that provided for in the contract constitutes an excessive charge, and it was the duty of the commission to so find. This being true, is the appellee allowed to defend against a claim for reparations on the ground that the contract, regardless of whether legally so determined, is, in fact, unjust and discriminatory? Evidence that the contract was of such a character was offered on this hearing and admitted over the appellant's objection. If the appellee can avail itself of such a defense in the present state of the record, the evidence was, of course, admissible, otherwise it was not. The only basis for the doctrine that the legislature may enact laws voiding the obligation of contracts is found in the police power of the State. Certainly where the act passed provides for specific notice, hearing and a finding before a contract can be set aside, the doctrine should not be expanded to justify the destruction of contractual obligations by inference or implication, without a direct and specific hearing on the issue of their reasonableness and justness. The contract not having been abrogated, evidence concerning its reasonableness is not material on this hearing.

We are of the opinion that as the appellant's contract is still in force it must be held to be the measure of the rights and liabilities of the parties. The statute provides the means by which such contracts may be set aside when found to be unjust and discriminatory, but until that is done the utilities are required to operate under them. That the appellee might have had the contract abrogated does not change the situation. The means of so doing involve a specific complaint concerning such contract and a notice and hearing thereon. Until that is done the contract is in effect. The contract having been valid when made and when filed as a schedule by the appellee on February 6, 1914, and not having been declared invalid as provided by the act, it forms the basis of a proper claim for reparations,

and the finding and order of the commission to the contrary was not justified and not in accordance with the law, and the circuit court erred in affirming the same.

The order of the circuit court is reversed and the cause remanded, with directions to remand the same to the Illinois Commerce Commission, as successor of the Public Utilities Commission, for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*