(No. 18902.—

THE PALMYRA TELEPHONE COMPANY, Appellee, *vs.* THE MODESTO TELEPHONE COMPANY *et al.* Appellants.

*Opinion filed June 19, 1929—Rehearing denied October 4, 1929.*

KNOTTS & KNOTTS, and LEWIS RINAKER, for appellants.

STEVENS & HERNDON, (BENJAMIN S. DEBOICE, of counsel,) for appellee.

Mr. COMMISSIONER CROW reported this opinion:

This case comes by appeal from a judgment of the circuit court of Macoupin county affirming an order of the Illinois Commerce Commission granting to the Palmyra Telephone Company the right to construct and operate its telephone line and to serve certain persons in the operation of its telephone system. The controversy concerns an alleged invasion by the Modesto Telephone Company, one of the appellants, of rural territory served by appellee and taking rural subscribers from it. The Palmyra Telephone Company owns and operates a telephone exchange serving the village of Palmyra and surrounding territory. The property was acquired by purchase from the Waverly Telephone Company, which had previously owned and operated the exchange. The Waverly Company's license in the vil-

lage expired and a controversy arose between it and the village, which terminated in a judgment of ouster against it by the circuit court. In the meantime, Charles Masters, president of appellee, sought and obtained an ordinance from the village granting appellee a license to build, operate and maintain a telephone exchange in the village. The ordinance was passed and approved November 2, 1925, and accepted by appellee the next day. Appellee filed a petition with the Illinois Commerce Commission on December 8, 1925, for a certificate of convenience and necessity authorizing it to transact a telephone business in the village. On December 21, 1925, the Waverly Company ceased to operate its Palmyra exchange and on December 24 appellee contracted to purchase its property, and it filed an amended petition with the commission on December 26, 1925, asking for the approval of the contract and for a certificate of convenience and necessity authorizing it to transact a telephone business in the territory formerly served by the Waverly Company's Palmyra exchange. On February 9, 1926, the Commerce Commission entered an order authorizing appellee to acquire the plant and equipment comprising the Waverly exchange, and granting a certificate of convenience and necessity authorizing it to construct, maintain and operate a telephone exchange and to transact a public utility telephone business in the territory then or previously served by the existing telephone exchange in the village of Palmyra. On February 10, 1926, appellee began the operation of its telephone exchange in Palmyra and surrounding territory. From December 21, 1925, to February 10, 1926, while the Palmyra exchange was closed, the Modesto Company constructed lines into the territory formerly occupied by the Waverly Company and substituted its telephones for telephones formerly connected with the Palmyra exchange. On March 9, 1926, appellee filed the original complaint with the commission. The complaint averred that the Modesto Company "has

invaded the rural territory of complainant and has taken over from your complainant a large number of subscribers, to-wit, seven," giving the names of six, and averring its ability to serve said subscribers. It concludes with a prayer that the commission enter an order directed to the Modesto Company ordering it to cease invading the territory of complainant and to discontinue service to the subscribers taken from complainant. A hearing was had before the commission and an order was entered by it on July 15, 1926, dismissing the complaint. The order related only to the six subscribers named in the original complaint, and the commission found that the Modesto Company extended service to them while the Palmyra exchange was out of operation. Testimony was heard at the original hearing concerning nine subscribers.

Appellee filed a petition for rehearing, averring (1) that the subscribers named in the order of July 15, 1926, did not include all of the subscribers concerning which complaint was made at the original hearing, and that the Modesto Company has further invaded the territory of the Palmyra Company and taken subscribers therefrom since the date of the hearing and order in this case; (2) that the subscribers in question were originally subscribers of the Waverly Company, and that the Palmyra Company had sought and obtained a certificate of convenience and necessity to serve the territory; (3) that the Modesto Company had no certificate of convenience and necessity to serve the territory and that the order previously entered does not give such certificate, wherefore the Modesto Company has no authority to operate a telephone exchange in the territory in question; (4) that the order does not establish a definite dividing line between the parties hereto; (5) that the order is contrary to the evidence, equity and good conscience and not in compliance with the law. The petition for rehearing was allowed and the case was again heard on January 5, 1927. At that hearing the record shows that

appellants O. A. Hierman, Charles Zelmer and Alvin Gowin were present and testified on their own behalf. On April 13, 1927, the commission issued its final order, from which appellants appealed to the circuit court. The order of the commission was affirmed and an appeal was perfected to this court.

The commission found that in serving Crawford, Grow, Mansfield, Schrann, Vandeveer, Watkins, King and Neece the Modesto Company is not invading the territory of appellee; that as to Hierman, Crump, Zelmer, Gowin and Lair, the service extended by the Modesto Company is an invasion of the territory of appellee and ordered that it be discontinued. Crump and Lair are not complaining of the order.

One error is assigned on the record—that the court erred in confirming the order of the commission. Five reasons are stated in support of the assignment, the fifth being, the order is arbitrary and unreasonable and therefore unlawful and void. Counsel say this includes the other four.

The first branch of the argument of appellants is directed against the manner in which an amendment to the complaint was made at the first hearing, and the effect of the original order extending the right of appellee to furnish service to persons not parties at that time. If the commission passed upon the rights of some of the persons not made parties to the proceeding and did not pass upon the rights of others who were not made parties, no one was injured by the rehearing and the rehearing allowed gave everyone the right to be heard. The whole case was re-opened and came on for hearing as though no previous order had been entered. (*Public Utilities Com.* v. *Pittsburg, Cincinnati, Chicago and St. Louis Railroad Co.* 290 Ill. 580.) The fact that the installation of the Gowin, Neece and Hierman telephones was made before the first hearing, as two were, or after, as one was, does not affect the rights of anyone now, because the rehearing opened the

inquiry as to all. It is said the condition of the record arose from the fact that at the rehearing counsel stated he "wished to read into the record the names of the subscribers who are complained of, so there will be no variance in entering the next order," and that none were, in fact, read. If it were material, the condition of the record is as much the fault of one counsel as of the other, for both were interested in having a correct record. The commission is merely an administrative body created by the State for carrying into effect the will of the State as expressed by its legislature. (*Public Utilities Com.* v. *Chicago and West Towns Railway Co.* 275 Ill. 555.) Complaining counsel stood by, knew what was going on and permitted a hearing, without objection, for defect of parties, if there was a defect, and it is now too late to complain of it. They were then aware, as they now are, of section 60 of the Public Utilities act, that "no informality in any proceeding or in the manner of taking testimony * * * shall invalidate any order, decision, rule or regulation made, approved, or confirmed by the commission." Whatever may have been the defect in the record at the original hearing, there is none in the record now complained of. No order was sought against the individuals. Orders are directed to those serving and not to those served. The right of the utility to operate did not depend on whether the individuals wished its service or that of another. It can lawfully serve no territory not embraced in its certificate of convenience and necessity.

The second part of the argument is devoted to the rights of the individual appellants. It is contended that the finding of the commission that the Palmyra Company is in a position to give adequate service in the territory awarded to it is not sustained by the evidence. It is said in support of the contention, that the subscribers of the Waverly and the Palmyra Companies had dwindled from four hundred to one hundred and fifty in number; that

two hundred and fifty-five past and present subscribers had petitioned the commission to grant a certificate to the Modesto Company to operate in that territory; that patrons of the other companies were unable to persuade the Modesto Company to come to them, therefore they built to and contracted with the Modesto Company in its own territory. The contention overlooks the provisions of the Public Utilities act and its general purpose. Without the connivance of the defendant company they cannot be served by it. That would be a violation of the letter and spirit of the act. The legislature, as part of the machinery for its administration, provided for the commission and vested in it plenary power to administer the act. It provided for hearings upon evidence and for rehearings upon petition of dissatisfied bodies required to resort to it for relief, when such further evidence may be adduced as the parties deem necessary. The purpose of the act is to bring under control of the public, for the common good, property applied to a public use in which the public has an interest. The owner of such property must submit to be controlled by the public to the extent of its interest as long as such public use is maintained. (*Munn* v. *People,* 94 U. S. 113; *People* v. *Western Union Telegraph Co.* 166 Ill. 15; *Inter-Ocean Publishing Co.* v. *Associated Press,* 184 id. 438.) To constitute a public use all persons must have an equal right to use the utility and it must be in common and upon the same terms, however few the number who avail themselves of it. The use must concern the public as distinguished from an individual or any particular number of individuals, but the use and enjoyment of the utility need not extend to the whole public or political subdivision. Such use may be confined to a particular district and will be public. (*Public Utilities Com.* v. *Noble Telephone Co.* 268 Ill. 411; *Public Utilities Com.* v. *Bethany Telephone Ass'n,* 270 id. 183.) In this case the commission applied the principle by assign-

ing to the appellant company and the appellee company territory to be served and must protect each from invasion by the other.

Notwithstanding the public character of the utility is not determined by the number resorting to its service or willing to accept it, the individual appellants argue that the Commerce Commission has no constitutional right to assign them to any territory. The fallacy of the contention lies in the assumption that said appellants are assigned to a territory by order of the commission. It exercised the power vested in it to determine whether the Modesto Company had invaded the territory of appellee by undertaking to serve the three individual appellants and others not complaining of the order. The commission decided from the evidence before it, as the basis for the orders affecting the individual appellants, that they reside nearer to the village of Palmyra and therefore the Palmyra Company should serve them, and for that reason directed the appellant company to desist from serving them. All of the orders are directed to or against the utility companies. None of the orders require anyone to patronize either company.

The decision made by the Commerce Commission was within the scope of its authority, not without foundation in the evidence, and no constitutional right has been infringed by its decision. The determination of the questions in dispute is the limit of the power of the courts in the review of its decision. (*Wabash, Chester and Western Railroad Co.* v. *Commerce Com.* 309 Ill. 412; *Chicago Bus Co.* v. *Chicago Stage Co.* 287 id. 320.) The findings of the commission are conclusive on the courts unless manifestly against the evidence. (*Public Utilities Com.* v. *Smith,* 298 Ill. 151.) We must accord to its decisions the strength due to the judgment of a tribunal appointed by law and informed by experience. (*Public Utilities Com.* v. *Springfield Gas Co.* 291 Ill. 209.) Having examined the record,

guided by these canons, we find no error in the order of the Commerce Commission nor in the judgment of the circuit court approving it.

The judgment of the circuit court approving the order is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*