(No. 21475.— ▇▇▇▇▇▇▇▇▇)

THE JEFFERSON BUILDING CORPORATION, Appellant, *vs.*
THE CENTRAL ILLINOIS LIGHT COMPANY, Appellee.

*Opinion filed October 22, 1932.*

BENJAMIN F. GOLDSTEIN, for appellant.

QUINN, QUINN & O'HERN, (CHARLES V. O'HERN, and
JAY J. ALLOY, of counsel,) for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the
court:

The Jefferson Building Corporation has appealed from
a judgment of the circuit court of Peoria county affirming
an order of the Illinois Commerce Commission abrogating
a contract theretofore entered into between appellant and
the Central Illinois Light Company. The contract in ques-
tion was before this court for consideration in *Jefferson
Deposit Co.* v. *Central Illinois Light Co.* 309 Ill. 262, to the
opinion in which case attention is called and the statements

of fact therein contained are by reference incorporated herein. On remandment of the cause to the commission, and pursuant to the mandate of this court, the commission entered its supplemental order granting refund to appellant of the amount set up in the original complaint to September 4, 1919, the date of the complaint, with interest to date of payment. Thereafter, on November 16, 1923, appellant filed its supplemental complaint in the same commission case asking for additional refunds of overcharges paid under protest, since September 4, 1919. On December 8, 1923, appellee filed an original petition before the commission to abrogate the contract, to which petition appellant filed its answer January 3, 1924. The supplemental petition of appellant and the original petition of appellee were consolidated on June 24, 1924, by stipulation between appellant and appellee and by order of the commission. The commission entered its final order in the consolidated case on January 28, 1925. In this order the commission found the contract was binding on the parties to that date; that appellee's petition of December 8, 1923, was the first and only petition which properly raised the issue of the continued binding force of its contract with appellant; that upon the record before it the contract was "unjust, preferential and discriminatory as against the other patrons of said company and therefore invalid." The commission therefore ordered refund of overcharges to the date of the order, January 28, 1925, but ordered the contract abrogated for the period subsequent to the date of the order to the expiration date of the contract, April 5, 1930. Appellee made refund to January 28, 1925. On appeal by appellant to the circuit court of Peoria county from that portion of the order of January 28, 1925, ordering appellee to abrogate the contract, the order was affirmed on March 5, 1932, from which judgment appellant appeals to this court.

Appellant relies on two propositions: First, that special circumstances surrounding the contract of November 29,

1909, exempt it from the operation of the Illinois Commerce Commission act; and second, that the finding of the commission in its order of January 28, 1925, that the contract is "unjust, preferential and discriminatory as against the other patrons" of appellee, is not supported by any evidence in the record.

The special circumstances relied upon are, that appellant in 1910 constructed its building according to plans and specifications approved by appellee's predecessor, which plans excluded the installing of a private power plant and appliances necessary to supply heat and light for appellant's own use and for sale by appellant to its 148 tenants and included the construction by appellant of the necessary pipes and appliances to permit appellee's predecessor and its assigns to serve the building and its tenants; that appellant granted appellee's predecessor the exclusive right to supply the 148 tenants with the services of appellee, which right appellee and its predecessor have throughout the period of the contract exercised; that appellant, relying on the contract, in 1910 entered into long-term leases with tenants by the terms of which they were to receive heat as part of the fixed rentals, one of which, involving a large area, was still outstanding in 1925, to continue during the term of the contract; that to obtain steam power and electricity to operate the building to carry out its obligations under its leases and to supply electricity to its tenants and not to purchase the same from appellee, appellant would be required to build a plant of its own and to install therein machinery and appliances at a cost greatly in excess of the amount for which such plant, machinery and appliances could have been constructed and equipped at the date of the contract, in 1909, as originally contemplated by appellant, and that appellant agreed to pay for steam and for 75,000 kilowatt hours of electricity, whether used or not.

Appellant bases its first contention, that the contract is exempt from the operation of the Illinois Commerce act,

upon *Schiller Piano Co.* v. *Illinois Northern Utilities Co.* 288 Ill. 580, and upon that part of paragraph 54, chapter 111a, of Cahill's Statutes which is as follows: "If prior to June 30, 1913, any real estate or other tangible property shall have been sold or transferred to any public utility or public service corporation, or, if before that date, any obligation of any public utility or public service corporation created in consideration of the transfer to it of any real estate or other tangible property, shall have been released or canceled, upon consideration in whole or in part of an agreement by such public utility or public service corporation expressed in writing to render any service, or furnish any commodity or product in the future to the party or parties making such conveyance or transfer or owning such obligation, nothing in this act contained shall be construed to in anywise affect such agreement or to prevent the performance or enforcement thereof according to its terms, or to authorize the commission to interfere with such performance or enforcement." It is apparent that this provision of paragraph 54 can have no application to this contract, as appellant transferred no real estate or tangible property to the Central Illinois Light Company, and that no obligation of the utility company created in consideration of the transfer to it of any real estate or other property had been released or canceled upon consideration, in whole or in part, of an agreement by such utility company to furnish any commodity or product in the future to appellant.

In *Hite* v. *Cincinnati, Indianapolis and Western Railroad Co.* 284 Ill. 297, it was held that all contracts, whether made by the State itself, by municipal corporations or by individuals, are subject to be interfered with by subsequent statutes enacted in the *bona fide* exercise of the police power, that such contracts did not by reason of the contract clause in the Federal constitution enjoy any immunity from such legislation and that the Public Utilities act was passed by

the General Assembly in the exercise of its police power. In the *Schiller Piano Co. case* the piano company conveyed to the utility company a 117-horsepower interest which it then owned in a dam, in consideration of the utility company furnishing the piano company 90 kilowatts of electrical power forever free of charge and that the piano company should pay for all in excess of 90 kilowatts. Thereafter the amount of energy was reduced to 72.4 kilowatts, which was shown to be the exact amount of power which could be delivered, after deducting loss in transmission, from that generated by the 117-horsepower which had been conveyed. It was there held that the equivalent in value for the service agreed to be furnished having been paid by the conveyance of the property, the contract was not annulled by the enactment of the Public Utilities act, the contract having been entered into prior to the passage of that act. Under the circumstances in that case no discrimination was shown as against any of the other users of the energy. The piano company transferred to the utility company its water-power interest in the dam and the utility company returned the same to the piano company transformed into electrical energy, less the cost of transformation and transmission. By reason of this contract no user of the products of the utility company was caused to pay more for what it received than it would have done had the contract not been in force, and the evidence showed no discrimination, by reason of the contract, against either the utility company or any of its customers. That case can have no application here. Appellant's first contention cannot be sustained.

The commission heard a large amount of evidence, which showed that there was a difference between the contract rate and other rates for services similar to that furnished appellant by appellee, and that the lump sum contract rate was less than the flat and meter rates for steam. The commission in its order on January 28, 1925, found "that the terms of the contract between the Jefferson Deposit

Company and the Central Illinois Light Company, * * * and the furnishing of steam, gas and electric service thereunder, are unjust, preferential and discriminatory as against the other patrons of said public utility, and said contract should therefore be held invalid, and that the Central Illinois Light Company should be ordered forthwith to abrogate said contract and to cease and desist from furnishing any further steam, gas or electricity under or according to the terms of said contract from and after the date of this order." This finding of the commission was affirmed by the circuit court. The decision made by the Commerce Commission was within the scope of its authority and not without foundation in the evidence, and such findings are conclusive on the courts unless manifestly against the evidence. *Palmyra Telephone Co.* v. *Modesto Telephone Co.* 336 Ill. 158.

In *Jefferson · Deposit Co.* v. *Central Illinois Light Co. supra,* with reference to this contract it was said: "While the intention of the act is to prevent discrimination in rate charges it provides the method by which contracts may be abrogated, and their validity cannot be attacked in any other way. Such contracts were not, as contended by appellee, destroyed by the passage of the act. At the time the appellant filed its complaint for reparation its contract had not been abrogated." The hearing in this case was upon appellant's supplemental complaint asking for additional refunds of overcharges paid under protest since the date of the former allowance and the Central Illinois Light Company's petition to abrogate the contract. The evidence in the case showed that the contract was "unjust, preferential and discriminatory as against the other patrons of said company and therefore invalid." The commission was right in its order abrogating the contract and ordering a refund of overcharges to the date of the order of abrogation, and the circuit court properly affirmed the order on appeal.

The judgment must therefore be affirmed.

*Judgment affirmed.*